**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **RAYONDA P. [1],** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )        **Civil Action No. 7:18-cv-190** |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Rayonda P. ("Rayonda") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Rayonda alleges that the Administrative Law Judge ("ALJ") erred because substantial evidence does not support: (1) the ALJ's physical RFC evaluation; (2) the ALJ's mental RFC evaluation; and (3) the ALJ's assessment of Rayonda's subjective allegations of impairment. Rayonda also alleges that remand is warranted based on the new evidence she submitted to the Appeals Council.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Rayonda's Motion for Summary Judgment (Dkt. No. 16) and **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rayonda failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Rayonda filed for DIB and SSI on July 8, 2012, claiming disability due to carpal tunnel syndrome, three herniated discs in the neck, depression, fibromyalgia, and trouble remembering basic things due to medications, with an alleged onset date of November 6, 2010. R. 132, 143. Rayonda's date last insured was March 31, 2018[3]; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 132; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Additionally, to receive SSI, Rayonda must show that she has been disabled for at least twelve months prior to the date of filing her disability application. Rayonda was 30 years old when she applied for DIB

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] In her applications, Rayonda alleged her date last insured was December 31, 2016. R. 132, 143. The ALJ determined that Rayonda met the insured status requirements of the Act through March 31, 2018. R. 47.

and SSI, making her 28 years old and a younger individual on her alleged onset date. R. 132,

143. The state agency denied Rayonda's applications at the initial and reconsideration levels of

administrative review. R. 132–79. On May 2, 2017, ALJ James Grimes held a hearing to

consider Rayonda's claims for DIB and SSI. R. 62–131. Counsel represented Rayonda at the

hearing, which included testimony from vocational expert Gerald Wells. R. 62. On July 10,

2017, the ALJ entered his decision analyzing Rayonda's claims under the familiar five-step

process[4] and denying her claim for DIB and SSI benefits. R. 44–55.

The ALJ found that Rayonda had not engaged in substantial gainful activity since

November 6, 2010, the alleged onset date. R. 47. The ALJ determined that Rayonda suffered

from the severe impairments of fibromyalgia, degenerative disc disease, migraine headaches,

anxiety, depression, and post-traumatic stress disorder (PTSD). Id. The ALJ determined that

there was some medical evidence of obesity, but found it to be non-severe. R. 48. The ALJ

determined that Rayonda's impairments did not meet or medically equal a listed impairment,

specifically considering listings 1.02 (major dysfunction of a joint), 1.04A (disorders of the

spine), 12.04 (depressive, bipolar, and related disorders), 12.15 (trauma- and stressor-related

disorders), and 14.09 (inflammatory arthritis), along with Social Security Ruling ("SSR") 12-2p

(evaluation of fibromyalgia). Id. Regarding Rayonda's mental impairments, the ALJ determined

that the "paragraph B" criteria were not satisfied, finding that Rayonda had mild limitations in

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence,
whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the
requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform
other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);
Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant
disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of
proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the
Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the
claimant's age, education, work experience, and impairments, to perform available alternative work in the local and
national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

understanding, remembering, and applying information; mild limitations in interacting with others; mild limitations with regard to concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing herself. R. 49. The ALJ likewise determined that the "paragraph C" criteria were not satisfied. R. 50.

The ALJ concluded that Rayonda retained the residual functional capacity ("RFC") to perform light work. Id. For postural limitations, he found that Rayonda could frequently balance; occasionally climb ramps or stairs, stoop, kneel, and crouch; and never crawl or climb ladders or scaffolds. Id. Rayonda could occasionally be around unprotected heights and moving mechanical parts. Id. The ALJ also determined that Rayonda could respond appropriately to occasional changes in a routine work setting, but could frequently respond appropriately to the public and coworkers in work situations. Id. The ALJ found that Rayonda would be able to perform her past relevant work as a housekeeper and cashier. R. 53–54. The ALJ further determined that Rayonda could also perform jobs that exist in significant numbers in the national economy, such as hand presser, cafeteria attendant, and deli cutter-slicer. R. 54–55. Thus, the ALJ concluded that Rayonda was not disabled. R. 55. Rayonda appealed the ALJ's decision and the Appeals Council denied her request for review on March 2, 2018. R. 1–4.

## ANALYSIS

Rayonda alleges that the ALJ erred because: (1) substantial evidence does not support the ALJ's assessments of Rayonda's physical impairments and RFC evaluation; (2) substantial evidence does not support the ALJ's RFC evaluation regarding Rayonda's mental impairments; and (3) substantial evidence does not support the ALJ's assessment of Rayonda's subjective allegations of impairment. She also alleges that remand is warranted based on the new evidence she submitted to the Appeals Council.

4

**A. Medical History**

1. <u>Physical Impairments</u>

In her initial application, Rayonda claimed disability due to carpal tunnel, herniated discs in her neck, and fibromyalgia. R. 132, 143. Rayonda testified that her entire body started hurting suddenly one day in November 2010, and she has had pain since. R. 76. She has been examined for fibromyalgia (R. 490, 512, 514, 517, 803), neck pain (R. 550, 581, 803, 1162), back pain (R. 484, 587, 616, 628, 817), chronic pain syndrome (R. 795, 811, 864), and degenerative disc disease (R. 768, 1060). Rayonda takes medication, including narcotics, for her fibromyalgia and pain. R. 490, 510, 517, 531, 795, 803, 811, 817, 865. In November 2015, Rayonda went to the ER after having a migraine for eleven days. R. 822.

In December 2010, imaging studies revealed no abnormality in Rayonda's lumbar spine. R. 537. A June 2012 cervical MRI showed disc herniations at C4-C5 and C5-C6. R. 510, 584. A second cervical MRI in September 2012 also showed a herniation at C4-C5. R. 1057. Rayonda had a surgical evaluation in September 2014 with Jason Peery, PA, at which he diagnosed cervical degenerative disc disease. R. 768. An x-ray showed degeneration at C4-C5, C5-C6, and C6-C7. R. 767. Rayonda reported that medication provided her with relief from pain, and she was not having any trouble with coordination or dropping things. R. 765. Mr. Peery recommended physical therapy, anti-inflammatories, and injections. R. 768. A later CT scan in October 2014 showed mild stenosis at C5-C6, but Rayonda's disc herniations had resolved. R. 774. As a result, Mr. Peery did not recommend surgery and instead referred her to pain management. <u>Id.</u> Rayonda had a pain management evaluation with Dr. Alfred Beshai in March 2015, who noted that Rayonda was "applying for SSDI which might be a hindering factor from getting full benefit from any effort to help with the pain." R. 789.

Rayonda had a second spinal surgery evaluation in February 2015 with Dr. Raymond Harron, who also did not recommend surgery. R. 780. He noted that Rayonda's September 2014 thoracic spine MRI was normal, that her cervical disc herniations had improved significantly, and that she had a normal neurological exam. R. 779–80. In April 2017, Rayonda returned to see Mr. Peery. She had x-rays taken, which were normal. Ultimately, she left before Mr. Peery was able to see her. R. 108–09, 1145–46.

Rayonda testified that she also has left knee pain. R. 96. In February 2011, an imaging study showed no acute disease in her knee. R. 541. She was diagnosed with patellofemoral syndrome in May 2011. R. 514, 517. Rayonda went to the ER for knee pain in May 2013, which she alleged was a new problem. She was diagnosed with internal derangement of the left knee and given pain medication. R. 622, 625. In June 2013, she reported that her knee had not been bothering her as much after she had been walking for exercise daily. R. 671.

Rayonda's compliance with treatment recommendations varied. Multiple doctors recommended that Rayonda adopt a healthy diet or exercise to lose weight, as they believed doing so would alleviate at least some of her pain symptoms. R. 514, 527, 531, 646, 672, 686, 789. Yet Rayonda refused physical and aquatic therapies. R. 523, 525. From October 2015 to March 2016, Rayonda cancelled or missed many primary care appointments. R. 1131–37.

Rayonda completed function reports in August 2012 and June 2013. She reported she did not have problems with personal care and helps to care for her children. R. 347–48, 395. She did not require reminders to take care of her personal needs or to take medications. R. 349, 396. She made simple meals for herself, ironed and separated clothes, and could go out on her own and drive. R. 349–50, 396–97. Her hobbies included reading, writing a book, and watching crime shows. R. 351, 398. She initially reported being able to go shopping weekly and handle finances

(R. 350), but later indicated she no longer shopped in stores and did not handle money (R. 397).

In her August 2012 fatigue questionnaire, Rayonda indicated that she sleeps more than half of

the day each day, although she also stated that she was unable to do things that she reported she

could do in her function report, like drive, shop, and care for her children. R. 359.

    At the hearing, Rayonda explained that she was terminated as a CNA because she missed

too many days of work. R. 81. The same happened when she worked at Wendy's afterward.

R. 85. Rayonda then tried to be a private nurse, but was unable to perform the duties of that job.

R. 85–86. Rayonda testified to having constant neck pain, which causes tingling in her right arm

through her fingers. R. 91. She said she was unable to grip or hold things with her right hand.

R. 92. Rayonda testified to having migraines that last seven days or longer at least once per

month. R. 94. She also testified to left knee pain (R. 96) and constant lower back pain (R. 98).

Her son, husband, and neighbors helped her to do chores. R. 101. Rayonda used a cane to walk,

even though she was never prescribed one. R. 103, 107. Rayonda testified that, after losing 133

pounds following gastric bypass surgery, her pain got worse instead of better. R. 104. She

testified that there was nothing else she could try for her pain because doctors refused to do

surgery, she had an allergy that prevented injections, and pain management did not help. R. 105–

06. Rayonda alleged that overall, her doctors did not listen to her. R. 100.

    2.  <u>Mental Impairments</u>

    In her initial application, Rayonda claimed disability due to depression and trouble

remembering things due to her medications. R. 132, 143. Rayonda testified that she experiences

symptoms of anxiety and depression constantly. R. 100. In fact, she has been evaluated for

anxiety (R. 490, 523, 681, 695, 811), depression (R. 490, 514, 556, 1097), and PTSD (R. 1096,

1100). Rayonda took medication for her psychological conditions. R. 490, 523, 641, 811. In May

2013, Rayonda reported that she had stopped taking her medications because her depression was better without it (R. 641), but the records indicate she has continued to take medication since that time. In her August 2012 and June 2013 function reports, Rayonda reported not engaging in any social activities because of her mental health issues. R. 351, 398. She can follow written instructions, but forgets spoken instructions. R. 352, 399. She gets along with authority figures, but does not handle changes in routine well. R. 353, 400.

From April to August 2015, Rayonda was seen by a counselor at Piedmont Community Services. But, Rayonda regularly failed to show up for her appointments, and her providers consistently noted that she was non-compliant with her treatment. R. 1106–07, 1115–30. She was eventually discharged for failing to comply with treatment. R. 1129. Rayonda explained that she stopped going because her providers were not listening to her complaints. R. 99–100.

    3.  <u>Medical Opinion Evidence</u>

In October 2012, as part of the state agency's initial disability determination, Lewis Singer, M.D., reviewed the record and determined that Rayonda's medically determinable impairments included disorders of the back (discogenic and degenerative) and fibromyalgia, which were severe, and affective disorders, which were non-severe. R. 136, 147. As part of Rayonda's physical RFC evaluation, Dr. Singer determined that Rayonda could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; and push or pull without limitation. R. 138, 149. For postural limitations, Dr. Singer found that Rayonda could frequently balance, but could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl. R. 139, 150. Dr. Singer found no manipulative, visual, communicative, or environmental limitations. <u>Id.</u> Dr. Singer ultimately concluded that Rayonda was capable of light work, but not her past relevant

work as a CNA or cashier. R. 139–41, 150–52. Joseph Leizer, Ph.D., completed a psychiatric review and found that Rayonda had no limitations in any of the "paragraph B" areas of functioning. R. 137, 148. Dr. Leizer also found that the "paragraph C" criteria were not satisfied. Id. Dr. Leizer noted that Rayonda's depression was well-controlled with medications and Rayonda was able to complete her activities of daily living without difficulty. Id. Consequently, Rayonda's depression was non-severe. Id.

As part of Rayonda's request for reconsideration of the state agency's disability determination, Dr. Carolina Bacani-Longa, M.D., evaluated the records in November 2013. She found the same medically determinable impairments as Dr. Singer, including regarding their severities. R. 161, 172. Dr. Bacani-Longa also made the same physical RFC determination, concluding that Rayonda is capable of light work. R. 163–65, 174–76. Jo McClain, Psy.D., made the same psychiatric findings as those made by Dr. Leizer. R. 161–62, 172–73. Dr. McClain similarly noted that Rayonda's activities of daily living did not reflect any recent issues and her depression was non-severe. R. 162, 173.

### B. Physical RFC Evaluation

Rayonda argues that the ALJ's physical RFC findings are not supported by substantial evidence because the ALJ failed to perform a function-by-function analysis. Pl.'s Br. at 10, Dkt. No. 17. Specifically, Rayonda asserts that the ALJ did not consider all of her physical impairments, including her cervical radiculopathy, medial epicondylitis, patellofemoral syndrome, internal derangement of the left knee, and migraines, and thus erroneously failed to include corresponding limitations in the RFC. Id. The ALJ also allegedly failed to make specific findings regarding Rayonda's inability to maintain a static work posture, need to lie down, and absenteeism, resulting in his not posing proper hypothetical questions to the vocational expert.

9

Id. Finally, Rayonda alleges that the ALJ did not sufficiently explain why he rejected the opinions of the state agency consultant who limited Rayonda to less than light work. Id. at 11. The Commissioner counters that substantial evidence supports the ALJ's RFC assessment in all respects because he reviewed the totality of the record, and Rayonda has not demonstrated that the physical conditions she lists result in additional limitations. Def.'s Br. at 3–5, Dkt. No. 19.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p, 1996 WL 374184 (July 2, 1996); see also Monroe v. Colvin, 826 F.3d 176, 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two

residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Rayonda's arguments amount to disagreements with the ALJ's RFC determination and she essentially asks the court to impermissibly reweigh the evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p. It contains sufficient information to allow meaningful review because the ALJ's findings include a detailed summary and analysis of Rayonda's impairments, medical records, testimony, and opinion evidence.

Rayonda argues that the ALJ failed to consider her cervical radiculopathy, medial epicondylitis, patellofemoral syndrome, internal derangement of the left knee, and migraines, and so he failed to develop appropriate limitations in the physical RFC. The ALJ determined that Rayonda had the severe physical impairments of fibromyalgia, degenerative disc disease, and migraines. R. 47. However, contrary to Rayonda's assertions, the ALJ explained that treatment notes supported his RFC determination and he specifically limited Rayonda to light work "based on evidence of cervical pain with radiculopathy that was further complicated by her fibromyalgia and migraine headaches." R. 53. The ALJ then went through and specifically associated each postural limitation with her corresponding conditions. For example, he limited Rayonda to occasional stooping, kneeling, crouching, and climbing ramps and stairs, and never crawling or climbing ladders or scaffolds, based on her fibromyalgia and cervical pain with radiculopathy. Id. Her migraine headaches and poor balance requiring use of a cane resulted in a limitation to only frequent balancing and occasional work around unprotected heights and moving mechanical parts. Id. Thus, the ALJ specifically considered Rayonda's migraines and radiculopathy, even though he determined they were not severe impairments. Medial epicondylitis is also related to

11

pain in the arm, but Rayonda does not point to any evidence to demonstrate that she requires additional limitations besides those already based on her radiculopathy. Finally, there are only sporadic mentions of knee pain in the record, and imaging studies were consistently unremarkable. In fact, the last mention in the record regarding Rayonda's knee was when she reported that it had not been bothering her.

Rayonda also argues that the ALJ failed to make specific findings regarding her inability to maintain a static work posture, need to lie down, and absenteeism, resulting in his not posing proper hypothetical questions to the vocational expert. "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003). The ALJ determined that Rayonda did not have exertional limitations beyond those already accounted for in light work, but found a number of postural limitations. R. 50. The ALJ discussed how Rayonda complained of neck and back pain, but listed the numerous examinations in the record at which Rayonda had normal range of motion, painless movement, good strength, normal motor skills, normal reflexes, no edema, and a normal gait. R. 51. The ALJ recognized that there was also evidence of neck tenderness, decreased sensation, spasms, and decreased motion in her neck, but then described how imaging studies showed Rayonda had a normal lumbar spine and improvements in the herniations in her cervical spine. Id. The ALJ also discussed Rayonda's fibromyalgia, noting her complaints of pain but also recognizing that her physical examinations showed no localized tenderness or edema, and that she took medication. R. 52. Significantly, the record is devoid of any mention from any medical source that Rayonda would be unable to maintain a static work posture, would need to lie down regularly, or that she would be absent from work excessively. While Rayonda testified that she was terminated from

12

her prior jobs for missing work excessively, substantial evidence supports the ALJ's choice to

not consider these limitations when there is no objective evidence to support them. Accordingly,

I cannot say that the ALJ erred in not posing those limitations to the vocational expert.

Finally, regarding the state agency consultant opinions, the ALJ accorded their opinions

some weight. However, Rayonda is incorrect in her assertion that one or more limited her to less

than light work because all of the state agency consultants determined that Rayonda would be

capable of light work. R. 141, 152, 165, 176. The ALJ also found more postural, environmental,

and mental RFC restrictions than the state agency consultants. R. 50. The ALJ adequately

explained that he gave these opinions only some weight because the state consultants did not

have the benefit of Rayonda's testimony or the treatment records after they conducted their

evaluations. R. 52. The ALJ included greater restrictions than those recommended by the state

agency physicians, so I cannot agree with Rayonda's assertion that the state agency consultants

found a more restrictive RFC than the ALJ.

I am not left to guess at how the ALJ arrived at his conclusions. The ALJ's findings

include a detailed summary of Rayonda's medical records with specific citations (R. 50–54), the

medical opinions (R. 52), Rayonda's hearing testimony (R. 50–51), and his conclusions (R. 51–

53). The RFC sets out Rayonda's physical limitations, including a number of postural and

environmental limitations. R. 50. The ALJ did build a logical bridge between the evidence and

his RFC determination; thus, the ALJ satisfied his responsibility under SSR 96-8p.

Generally, I will also emphasize that the standard in this case is substantial evidence, and

in determining whether substantial evidence exists to support the Commissioner's decision, this

Court must consider the record as a whole. See Wilkins v. Sec'y, Dep't of Health & Human

Servs., 953 F.2d 93, 96 (4th Cir. 1991). Applying this standard means that, if substantial

evidence supports the Commissioner, the fact that a claimant can point to a few records, or

portions of records, that could also support a different conclusion, does not change the outcome.

Indeed, the ALJ need not single out for discussion each piece of evidence in the record. See

Reynolds v. Colvin, 2014 WL 2852242, at *21 (S.D. W. Va. Aug 19, 2014), adopted by 2014

WL 4852250 (S.D. W.Va. September 29, 2014) (noting that the ALJ "need not discuss every

shred of evidence in the record," and is under no duty to explicitly refer to each exhibit).

### C.  Mental RFC Evaluation

Rayonda similarly argues that substantial evidence does not support the ALJ's

assessment of her mental impairments under SSR 96-8p. Specifically, Rayonda argues that the

ALJ erred in finding only mild limitations in concentrating, persisting, or maintaining pace, and

in interacting with others. Pl.'s Br. at 13, Dkt. No. 17. The ALJ also erred in finding that

Rayonda's moderate impairment in adapting or managing herself results in only limitations of

occasional changes in a routine work setting and frequent contact with the public and coworkers,

and did not explain how he came to this conclusion. Id. at 13, 15. Because the ALJ failed to

properly consider her mental impairments and corresponding limitations, the ALJ did not pose

proper hypothetical questions to the vocational expert. Id. at 14. The Commissioner counters that

substantial evidence supports the ALJ's findings regarding Rayonda's mental limitations because

he thoroughly considered the medical evidence and, additionally, Rayonda fails to point to any

specific evidence indicating that the ALJ should have made different findings regarding her

domains of functioning. Def.'s Br. at 11–12, Dkt. No. 19.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the

evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-

2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (1996); Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often). In Mascio v. Colvin, the Fourth Circuit clarified the ALJ's duty of explanation to adequately review the evidence and explain the disability decision. 780 F.3d 632, 636 (4th Cir. 2015). The ALJ has the responsibility to address the evidence of record that supports his conclusions. See Panna v. Colvin, No. 1:15cv229, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015) (remanding because "the ALJ failed to address [the claimant's] limitations in social functioning or explain why these limitations in social functioning did not translate to work related limitations in Plaintiff's RFC" like what is required by Mascio in concentration, persistence or pace cases); see also Fauber v. Colvin, No. 6:15-CV-16, 2016 WL 8736904, at *5 (W.D. Va. Aug. 12, 2016) (applying Mascio to a plaintiff's claim that the ALJ failed to account for his moderate limitations in social functioning in the RFC). While Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d at 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing evidence he found credible and specifically applying the law to the record).

15

Rayonda's arguments regarding the ALJ's findings relating to her concentration, persistence, and pace and social interaction limitations amount to further disagreement with the ALJ's RFC determination and she again asks the court to impermissibly reweigh the evidence. The ALJ's decision regarding the mental RFC includes the narrative discussion required by SSR 96-8p, contains sufficient information to allow meaningful review, and includes a detailed summary and analysis for the mental RFC evaluation.

In step three of his decision, the ALJ found that Rayonda had a mild limitation in interacting with others. Rayonda testified that she is uncomfortable talking to people she does not know, but objective medical treatment notes generally noted that she was pleasant, cooperative with a normal affect, but with some trust concerns and difficulties with some family relationships. R. 49. Regarding his mild limitation finding for Rayonda's concentration, persistence, or pace, the ALJ explained that Rayonda testified to having problems concentrating at times, but objective treatment notes reported few concerns in this area. Id.

Concerning Rayonda's mental impairments generally, the ALJ explained:

[T]he record indicates the claimant complained of anxiety, depression, heart palpitations, panic attacks, feeling overwhelmed, fatigue and thoughts of suicide. However, despite these allegations, the claimant was generally noted to be cooperative, have a good affect, good mood, with normal thoughts and a normal memory. There were less optimal findings as well, including appearing depressed/anxious, having trust issues, limited insight, irritability, crying spells, frequent mood changes, difficulties with stress and diagnoses of anxiety, depression and PTSD. The claimant was prescribed medication, such as Zoloft, Cymbalta and Klonopin, for these impairments. There is no evidence of any inpatient psychiatric hospitalizations during the relevant period.

R. 52 (citations omitted). In explaining the medical evidence, the ALJ addressed conflicting evidence and included specific citations to the exhibits and pages in the record. The ALJ further explained that he gave only some weight to the state consultants who found that Rayonda had no severe mental conditions or RFC limitations, finding that there is evidence in the record of "trust

issues, limited insight, irritability, crying spells, frequent mood changes and difficulties with stress, along with diagnoses of anxiety, depression and PTSD." Id. The ALJ then described his reasoning for the limitations, specifically that Rayonda would be limited to only occasional changes in the work setting "based on evidence of poor handling of stress and limited insight into her psychological conditions." R. 53. Regarding the frequent interaction with the public and coworkers, the ALJ explained this limitation was "based on her testimony that she felt uncomfortable in explaining complicated things and was uncomfortable around people she did not know, but with the evidence otherwise showing normal memory and thought processes, as well as appearing pleasant and cooperative during examinations." Id. Because the ALJ considered the medical opinions, evidence of mental impairment, and Rayonda's testimony, and explained the basis for his ruling, this Court is capable of meaningfully reviewing the RFC. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (finding that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence")).

Rayonda also alleges that the ALJ erred in not including a limitation relating to her moderate impairment in adapting and managing herself. Adapting and managing oneself is defined as an individual's abilities to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § 404 subpt. P, app. 1. In finding a moderate limitation in this area, the ALJ explained how Rayonda testified that she relies on others to help her, has crying spells, has difficulty working with authority figures, and has difficulties explaining complicated things to unfamiliar people. R. 49. The ALJ then described the many treatment notes, with

specific citations, indicating that Rayonda was properly groomed and dressed, but expressed concerns with stress levels, insight into her psychological conditions, and her ability to trust counselors and others. Id. The ALJ later noted that Rayonda took medications for her mental health conditions and has never had inpatient psychiatric hospitalizations. R. 52. In all of her treatment notes, the only limitation ever placed on Rayonda was to not lift objects over forty pounds. R. 53. Most significantly, Rayonda's providers reported that her medication was helping her mental health conditions and she had few limitations with her activities of daily living. Id.

Regarding the hypothetical questions posed to the vocational expert, the ALJ has the responsibility to address the evidence of record that supports his conclusions, and to ensure that the questions presented to the vocational expert include all of the limitations set forth in the RFC. See Panna, 2015 WL 5714403, at *3. In Mascio, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks, or unskilled work. 780 F.3d at 636. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Rayonda argues that the ALJ failed to explain how the mental RFC limitations account for Rayonda's moderate impairment in adapting and managing herself. To emphasize again, the Mascio decision does not require that a claimant's moderate impairment in concentration, persistence, or pace always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to address the evidence of record that supports his conclusion, and to ensure that the hypothetical questions posed to the vocational expert include all of the limitations in the RFC.

18

When the ALJ here presented his hypothetical questions to the vocational expert during the administrative hearing, the ALJ described a hypothetical individual who could "perform light work but has the following additional limitations. . . . This person can only respond appropriately to occasional changes in a routine work setting, [and] would frequently be able to respond appropriately to the public and coworkers in work situations." R. 127. The vocational expert testified that, based on those mental RFC limitations (along with all of the physical RFC limitations described in the ALJ's opinion), Rayonda would be capable of performing her past work as a housekeeper and cashier. R. 127–28. Unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process, and thus the question posed to the vocational expert is not deficient. Substantial evidence supports the ALJ's conclusion that Rayonda's moderate impairment did not result in additional limitations because he sufficiently explained that the mental RFC limitations already accounted for the problems that Rayonda described (stress regarding change and interacting with others). Furthermore, Rayonda does not point to any additional evidence or law that would demonstrate that she requires additional limitations. Based on the ALJ's explanations, I am able to follow his logical bridge and I find that substantial evidence supports his determination that no further limitation was warranted.

### D.  Rayonda's Subjective Allegations of Impairment

Rayonda argues that the ALJ's assessment of her subjective complaints is insufficient because substantial evidence does not support his determination that her allegations are generally inconsistent with the record. Pl.'s Br. at 19, Dkt. No. 17. The Commissioner counters that substantial evidence supports the ALJ's assessment, as he considered Rayonda's testimony and the entire medical record and is in the best position to evaluate her complaints. Def.'s Br. at 12, Dkt. No. 19.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Rayonda's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

Here, after the ALJ described Rayonda's testimony, summarized the medical evidence for her physical and mental impairments, and explained the opinion evidence, the ALJ found, "[T]he claimant's allegations [are] generally inconsistent with the record. Although, the medical evidence of record supports the existence of her conditions, they do not support her alleged limitations." R. 53. The ALJ continued by extensively comparing the objective medical evidence with Rayonda's subjective allegations of impairment. The ALJ described how the most recent imaging studies were relatively normal, as they showed that Rayonda had only a mild loss of cervical lordosis and mild multilevel degeneration with no instability and normal segmentation. Id. Treatment notes indicated that her cervical spine was showing improvement, as the herniated discs had resolved, and she had consistently normal neurological examinations. Id. The ALJ

20

pointed to notes from Rayonda's doctors who noted that her statements were inconsistent: while she complained of neck and shoulder pain, and that medication provided no relief from her symptoms, she was carrying her daughter. Id. It is also worth noting that Rayonda testified at the hearing to having carpal tunnel and not being able to hold onto objects, but there is no diagnosis for carpal tunnel, or any similar complaints, in the medical evidence.

Regarding her mental health, Rayonda testified that she stopped going to therapy because her counselors were not listening to her, but the treatment notes showed that Rayonda failed to show up to or cancelled appointments, and would not reschedule them, even when her counselors were consistently trying to contact her to schedule appointments. Id. The ALJ noted when Rayonda did meet with her therapists, they noted that her medication was helping her mental health and that Rayonda reported few limitations in activities of daily living. Id.

The ALJ also observed the conflicting nature of Rayonda's self-reports, as Rayonda testified that she could not do things around the home and relied on others to clean, shop, and help her get dressed, but previously reported no problems in these areas. Id. In fact, Rayonda reported little to no problem in those functional areas during the periods when imaging studies showed her condition to be objectively worse, specifically considering the June 2012 MRI demonstrating multiple disc herniations. See R. 348–51 (August 2012 function report). The ALJ correctly noticed that the only limitation any medical provider ever placed on Rayonda was to not lift objects over forty pounds. R. 53. The ALJ recognized that the activities she listed do not preclude disability, but they suggest that Rayonda may be overstating her symptoms and limitations. See Dolfax v. Astrue, No. 7:09–cv–67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.

1986)). As demonstrated by his explanation, the ALJ found that Rayonda's statements regarding the severity of her limitations and pain, based on a detailed consideration of Rayonda's medical history along with Rayonda's own allegations, were not entirely credible because they were not fully supported by the objective medical evidence, her treatment history, and her daily activities. The ALJ was entitled to find that the objective medical evidence outweighed Rayonda's subjective statements, and he provided a sufficient rationale for doing so.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Substantial evidence supports the ALJ's assessment of the inconsistency in Rayonda's statements, and that Rayonda is capable of performing work at the level stated in the ALJ's opinion.

### E.  Post-Hearing Evidence

Rayonda lastly argues that her case should be remanded based on the new evidence she submitted to the Appeals Council. Specifically, the new evidence contains records from a psychiatric hospitalization and a diagnosis of cervical dystonia, and Rayonda asserts that the ALJ's decision would have been different had this evidence been before him. Pl.'s Br. at 22–23, Dkt. No. 17. The Commissioner contends that the evidence submitted to the Appeals Council is irrelevant because it pertains to a period post-dating the ALJ's decision. Def.'s Br. at 13, Dkt. No. 19.

The "Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (internal quotations omitted). The

Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issues the decision. See 20 C.F.R. § 404.970.

The ALJ issued his decision on July 10, 2017. R. 55. The new medical evidence submitted by Rayonda is dated December 4, 2017 (R. 8–11), October 17, 2017 to December 11, 2017 (R. 12–31), and October 24, 2017 (R. 32–38). The Appeals Council concluded that all of the records submitted to it related to the time after the ALJ's decision and instructed Rayonda to file a new disability application if she wanted the SSA to consider that evidence.

Rayonda's submission of this argument is not well taken. This argument is borderline frivolous, as the regulations and the law are clear that any new evidence must relate to the period on or before the ALJ's decision. The proffered evidence does not come close to meeting that benchmark. Rayonda saw Emma Fauser, P.A., on December 4, 2017 (almost five months after the ALJ's decision) because of a "recent increase" in the severity of her headaches. R. 8. She was admitted to the Southern Virginia Mental Health Institute under a temporary detention order on October 12, 2017, following a suicide attempt. R. 33. A review of the admission records reveals that Rayonda faced many stressors leading up to her attempted suicide, and that those stressors arose after the ALJ issued his decision. Thus, I conclude that the Appeals Council was correct in instructing that the proper way to submit this evidence would be with a new application, and not with an appeal to this Court.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Rayonda's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  May 23, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge